IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CASE NO. 3:24MJ5299

## AFFIDAVIT TO COMPLAINT

### I. INTRODUCTION AND AGENT BACKGROUND

I, Andrew Lamour, being first duly sworn, hereby depose and state as follows:

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations and make arrests of offenses enumerated under federal law.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since August of 2021. I am assigned to the Toledo Field Office and responsible for investigating violations of firearms laws. I graduated from the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP) and the Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Basic Training (SABT) where I completed approximately twenty-six weeks of training. More specifically, I received extensive training in firearms identification, scenarios involving firearms and narcotics trafficking, and the identification and effects of controlled substances. Additionally, I received training on undercover investigations related to firearms and narcotics trafficking, which included investigative techniques and common suspect behavior. I served approximately two years as a Federal Law Enforcement Officer, working as a United States Customs and Border Protection Officer out of the Port of Detroit, Michigan as well as the Port of Honolulu, Hawaii.

3. I am currently assigned to the Columbus Field Division, Toledo Field Office where I am responsible for investigating violations of firearms laws, among other crimes. I have

participated in numerous investigations involving firearms and narcotics trafficking by armed individuals, assaults, homicides, and criminal street gangs. In addition, I have gained experience investigating firearms traffickers and their methods, and those of their associates regarding the importation, concealment, manufacture, transportation, distribution and sales of firearms, as well as their methods used to import, conceal, transport, and launder cash and/or other types of trafficking proceeds.

4. Through training, I have become familiar with the types and amounts of profits made by firearms traffickers, and the methods, language, and terms used by persons trafficking firearms. I am also aware that firearms trafficking is primarily a cash business. I know that firearms traffickers often generate large amounts of unexplained wealth, and attempt to conceal, disguise or legitimize unlawful proceeds through domestic and international banks, securities brokers, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses which generate large quantities of currency such as a car wash or a liquor store. In addition, firearms traffickers often use proceeds to purchase additional firearms to continue and promote the ongoing conspiracy. I am aware that firearms traffickers often communicate with their trafficking associates as well as their money laundering co-conspirators through the use of cellular devices, text messages, landlines, the Facetime and iMessage features on iPhones and applications downloaded on cellular telephones such as Snapchat, WhatsApp, Instagram, and many others.

5. The facts in this affidavit come from my personal knowledge, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6.  I know, based on my training and experience that 18 U.S.C. 922(a)(1)(A) provides in part that it shall be unlawful for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

7.  I know, based on my training and experience that 18 U.S.C. 922(o) provides in part that it shall be unlawful for any person to transfer or possess a machinegun.

8.  I know, based on my training and experience that 18 U.S.C. 933 provides in part that it shall be unlawful for any person to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony.

9.  Based on my training and experience and the facts as set forth in this affidavit, there is sufficient probable cause to believe that violations of Title 18 U.S.C. 922(a)(1)(A), (Dealing in Firearms without a License), Title 18 U.S.C. § 922(o) (Illegal Possession of a Machine Gun) and 18 U.S.C. § 933 (Trafficking in Firearms) ("Target Offenses"), have been committed by James RIPINSKI and that there is probable cause to arrest James RIPINSKI for the Target Offenses.

II.  **BACKGROUND OF THE INVESTIGATION**

10.  On July 10, 2024, James RIPINSKI met with an undercover ATF agent (ATF-1) and agreed to sell him firearms and a Glock Switch/ machine gun conversion device (MCD) conversion kit from James RIPINSKI. RIPINSKI arrived at the pre-determined meet location in a 2014 Chrysler 300. RIPINSKI exited his with firearms, ammunition, and a MCD and met with ATF-1 outside the pre-determined meet location. RIPINSKI installed a MCD on a firearm. ATF-1

provided RIPINSKI with the pre-recorded buy funds in exchange for one (1) firearm, two (2) MCDs and seventeen (17) rounds of ammunition. RIPINSKI then left the meet location.

11. Later in July 2024, RIPINSKI told ATF-1 he was in possession of multiple firearms available for sale and provided purchase prices to ATF-1. ATF-1 informed RIPINSKI the firearms were being purchased for a third party and they were being re-sold for a profit. RIPINSKI agreed to sell ATF-1 eight (8) firearms and arranged to meet ATF-1 in a pre-determined meet location. On July 30, 2024, RIPINSKI traveled to the pre-determined meet location and parked next to ATF-1. RIPINSKI told ATF-1 the firearms were in the trunk of his vehicle and invited ATF-1 to get out and examine the firearms. ATF-1 examined the firearms and invited RIPINSKI into his vehicle to exchange the remainder of the buy funds. ATF-1 explained to RIPINSKI the firearms ATF-1 is purchasing from RIPINSKI are being trafficked to Canada because the profit margins for firearms being trafficked to Canada are much higher. RIPINSKI indicated he understood and told ATF-1 he has multiple additional firearms for sale at varying price points. ATF-1 provided RIPINSKI with the pre-recorded buy funds in exchange for eight (8) firearms with ninety (90) rounds of ammunition.

12. In August 2024, RIPINSKI told ATF-1 he was in possession of multiple firearms available for sale ATF-1 again indicated to RIPINSKI the firearms were being purchased for a third party and they were being re-sold for a profit. On August 22, 2024, RIPINSKI agreed to sell ATF-1 five (5) firearms and arranged to meet ATF-1 in a pre-determined meet location. RIPINSKI travelled to the pre-determined meet location. RIPINSKI parked next to ATF-1 and invited ATF-1 to enter the rear passenger seat of his vehicle. ATF-1 examined the firearms and provided RIPINSKI with the pre-recorded buy funds in exchange for five (5) firearms with fifty-three (53) rounds of ammunition.

13. On the above dates, James RIPINSKI did not have a license to deal in firearms or to possess a machine gun.

14. The above-described firearms were manufactured outside the state of Ohio and therefore traveled in interstate commerce.

15. **Machine Gun Conversion Devices (MCD) -** Based upon my training and experience, I am aware of conversion devices that have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. I also know that these devices are referred to by different names, including but not limited to: "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs). I know that ATF considers Glock conversion devices as post-May 19, 1986, machineguns. Therefore, apart from official military and law enforcement use, Glock conversion devices may only be lawfully possessed by properly licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required of individuals manufacturing, importing, or dealing in National Firearms Act (NFA) weapons.

### III. CONCLUSION

16. Based on the information described above, there is sufficient probable cause to believe that violations of Title 18 U.S.C. 922(a)(1)(A), (Dealing in Firearms without a License),

Title 18 U.S.C. § 922(o) (Illegal Possession of a Machine Gun) and 18 U.S.C. § 933 (Trafficking in Firearms) ("Target Offenses"), have been committed by James RIPINSKI and that there is probable cause to arrest James RIPINSKI for the Target Offenses.

Respectfully submitted,

_____
Andrew Lamour, Special Agent, ATF

Sworn to via telephone after submission by reliable electronic means pursuant to Crim.R. 3, 4(d), and 4.1, this <u>12</u> th day of September 2024.

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE